**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

UNITED ASSOCIATION OF
JOURNEYMEN AND APPRENTICES OF
THE PLUMBING AND PIPE FITTING
INDUSTRY OF THE UNITED STATES
AND CANADA, AFL-CIO, LOCAL 188
PENSION FUND; UNITED ASSOCIATION
OF JOURNEYMEN AND APPRENTICES
OF THE PLUMBING AND PIPE FITTING
INDUSTRY OF THE UNITED STATES
AND CANADA, AFL-CIO, LOCAL 188
HEALTH & WELFARE FUND; UNITED
ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND
PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-
CIO, LOCAL 188 ANNUITY FUND;
UNITED ASSOCIATION OF
JOURNEYMEN AND APPRENTICES OF
THE PLUMBING AND PIPE FITTING
INDUSTRY OF THE UNITED STATES
AND CANADA, AFL-CIO LOCAL 188;
DANNY MACMILLAN, CHAIRMAN OF
THE BOARD OF TRUSTEES FOR THE UA
188 PENSION FUND, CHAIRMAN OF THE
BOARD OF TRUSTEES FOR THE UA 188
HEALTH & WELFARE FUND, AND
CHAIRMAN OF THE BOARD FOR THE
UA 188 ANNUITY FUND; and BARRY
ZEIGLER, SECRETARY-TREASURER OF
THE BOARD OF TRUSTEES FOR THE UA
188 PENSION FUND, SECRETARY-
TREASURER OF THE BOARD OF
TRUSTEES FOR THE UA 188 HEALTH &
WELFARE FUND, AND SECRETARY-
TREASURER OF THE BOARD FOR THE
UA 188 ANNUITY FUND,

     Plaintiffs,

  v.

CIVIL ACTION NO.: 4:18-cv-182

JOHNSON CONTROLS, INC.,

      Defendant.

## O R D E R

Presently before the Court is Defendant Johnson Controls, Inc.'s Motion for Summary Judgment, (doc. 26), and Supplemental Motion for Summary Judgment, (doc. 48).  This action arises from Defendant Johnson Controls, Inc.'s ("Johnson Controls") failure to make contributions for travel time and "standby" time to three employee benefits funds.  (Doc. 1 (original Complaint); doc. 46 (Amended Complaint).)  Plaintiffs filed this suit pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA") and the Labor Management Relations Act, 29 U.S.C. § 141 *et seq* ("LMRA"), in order to recover the alleged delinquent contributions and obtain equitable relief.  (Doc. 46.)  Johnson Controls filed the at-issue Motion for Summary Judgment, arguing, *inter alia*, that the unambiguous language of the applicable collective bargaining agreements shows that it was not obligated to make the alleged delinquent contributions.  (Doc. 26.)  Subsequently, with leave of Court, Johnson Controls filed the at-issue Supplemental Motion for Summary Judgment as to Plaintiff United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO, Local 188's request for an injunction under the Section 301 of the LMRA.  (Doc. 48.)  The issues have been fully briefed by the parties.  (Docs. 26, 29, 31, 48, 49.)  For the reasons stated below, the Court **DENIES** Johnson Controls' Motion for Summary Judgment, (doc. 26), and **GRANTS** Johnson Controls' Supplemental Motion for Summary Judgment, (doc. 48).

**BACKGROUND**

I.    **Procedural History**

A.    **The Parties**

Plaintiffs are the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO, Local 188 ("UA Local 188"), which is a labor organization based in Savannah, Georgia,[1] three employee benefit funds (the UA Local 188 Pension Fund, the UA Local 188 Health & Welfare Fund, and the UA Local 188 Annuity Fund (collectively, the "Funds")), and Danny MacMillan and Barry Zeigler, the chairman and secretary-treasurer, respectively, of each of the Funds' boards of trustees.  (Doc. 46, pp. 1, 3–8; doc. 47, pp. 2–4.)  Defendant Johnson Controls, a Wisconsin corporation, is a construction contractor and subcontractor that does business with the Funds.  (Doc. 46, pp. 7–8; doc. 47, p. 4.)  Johnson Controls employs individuals who are represented by UA Local 188 (the "UA Local 188 employees").  (Doc. 27, p. 4; see doc. 29-1, p. 8; see also generally doc. 27-1.)

B.    **The National Agreement and Working Agreement**

In March 2014, Johnson Controls and the Union entered into the National Installation and Service Agreement for the United States of America (the "National Agreement").  (Doc. 27, p. 2; doc. 29-1, p. 2; see doc. 27-2.)  Paragraph 3 of the National Agreement states that Johnson Controls and the Union "desire to mutually establish and stabilize wages, hours and working conditions for journeymen, apprentices, servicemen and tradesmen employed on a nationwide basis."  (Doc. 27-2, p. 3.)  Paragraph 13, which sets forth the "[s]cope of [w]ork" covered by the National Agreement, provides, in relevant part, "This Agreement covers the rates of pay, hours and working conditions of journeymen, apprentices, servicemen and tradesmen engaged in the

---

[1] UA Local 188 is the local affiliate of non-party United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO (the "Union").  (See doc. 27, p. 4; doc. 29-1, p. 4.)

installation and service of all plumbing and/or pipefitting systems . . . ."  (Id. at p. 5.)  Paragraph

46 states that, for employees covered by the National Agreement,

> wage rates, . . . hours of work, . . . on call time, . . . and contributions . . . for
> plans, programs, or funds . . . for . . . pensions, health and welfare, . . . *shall be in
> accordance with those established for all employees in local agreements*,
> negotiated by the local union of [the Union] and the historically recognized local
> Contractor's bargaining group.

(Id. at p. 10 (emphasis added).)  Paragraph 60 of the National Agreement provides,

> All travel time for service work only, in excess of reasonable commuting time
> before and after an employee's normal work hours, shall be paid for at the straight
> time rate, and *such travel shall not be considered hours worked and the pay,
> therefore, shall not be considered as pay for hours worked.* . . .  Where there is a
> bonafide [sic] locally negotiated service agreement clearly defining commuting
> time or a distance that is in conflict with this Agreement, the provisions of the
> local service agreement shall prevail."

(Id. at pp. 12–13.)

On September 1, 2014, UA Local 188 entered into a local collective bargaining

agreement (the "Working Agreement") with the South Georgia Mechanical and Erectors

Association.  (Doc. 29-1, p. 4; see doc. 27-3.)  The Working Agreement "covers the rates of pay,

hours and working conditions of all employees engaged in the installation of all plumbing and/or

pipe fitting systems and component parts thereof . . . in the trade jurisdiction of [UA Local 188]."

(Doc. 27, p. 4; doc. 29-1, p. 4; see doc. 27-3, p. 6.)  Article XI of the Working Agreement, titled

"Benefits," provides that each "Contractor"[2] shall make contributions to the Funds "based on the

---

[2] Under the Working Agreement, the term "Contractor" includes, in relevant part, a "corporation . . . that
does plumbing, air conditioning, heating, pipefitting systems and welding of all related materials and the
servicing thereof," which "[p]ossesses the general qualifications by technical training and experience in
the industry[,] . . . and . . . has an established place of business with facilities for properly installing the
work described herein."  (Doc. 27-3, p. 5.)  Johnson Controls does not dispute that it is a "Contractor"
under the Working Agreement and, therefore, was subject to its provisions.  (See doc. 26, pp. 5–6; see
also doc. 27, p. 7.)

per man hours actually worked" by the journeymen and apprentices "in its employ."[3]   (Doc. 27-3, pp. 34–35.)   Additionally, Article XVII provides that the Working Agreement's "terms and conditions . . . shall continue in full force and effect from September 1, 2014[,] until July 31, 2017, and, thereafter renew itself [sic] from year to year unless terminated as herein provided." (Id. at p. 41.)   In order to terminate the Working Agreement, the party "desiring to discontinue . . . the existing Agreement upon the termination date must send a written notice of such intent by registered mail at least ninety (90) days prior to the termination date."   (Id. at pp. 41–42.)

### C.      Johnson Controls' Contributions to the Funds and the 2017 Audit

It is undisputed that Johnson Controls made some contributions to the Funds for its UA Local 188 employees while the Working Agreement was in effect.   (Doc. 27, p. 7; doc. 29-1, p. 6; see generally doc. 27-1.)   However, in 2017, the Funds conducted audits of Johnson Controls' contributions to the Funds for the period of March 1, 2014, to February 29, 2016, (the "Audit Period").   (Doc. 27, pp. 11–12; doc. 29-1, pp. 8–10; see doc. 27-9.)   The auditors determined that Johnson Controls did not make contributions to each of the Funds for 855 hours of standby time and 75.75 hours of travel time during the Audit Period.   (Doc. 27, pp. 11–12; doc. 29-1, pp. 8–10; see doc. 27-9.)   When the auditors contacted a representative of Johnson Controls concerning these delinquent contributions, the representative indicated that Johnson Controls was not obligated to make contributions for standby time and travel time because standby time and travel time were not "hours actually worked" under the Working Agreement.   (See doc. 27, pp. 11–12; doc. 29-1, pp. 8–10.)   Furthermore, Tracy Thomas, a member of Johnson Controls' payroll accounting department, testified that Johnson Controls did not make contributions to the Funds

---

[3]   A Contractor is only obligated to make contributions to the Pension and Annuity Funds for "3rd through 5th year" apprentices.   (Doc. 27-3, p. 34.)

for travel time and standby because the Working Agreement did not contain "specific language" requiring it to do so.  (Doc. 27-8, pp. 38–40.)

## II.    Procedural History

### A.    Plaintiffs' Claims under ERISA and the LMRA

On July 31, 2018, Plaintiffs initiated this action to collect the alleged delinquent contributions for standby time and travel time.  (See doc. 1, pp. 4–8; doc. 46, pp. 8–13.)  In their Amended Complaint, Plaintiffs assert two counts against Johnson Controls: (1) a violation of Section 515 of ERISA, as amended, 29 U.S.C. § 1145 (Count I), and (2) a request for injunctive relief under ERISA and the LMRA (Count II).  (Doc. 46, pp. 9–12.)  In Count I, Plaintiffs allege that the Working Agreement required Johnson Controls to make contributions for standby time and travel time during the Audit Period.  (Id. at pp. 9–11.)  Plaintiffs contend that, in failing to make these contributions, Johnson Controls violated Section 515.  (See id.)  Accordingly, Plaintiffs seek to recover all unpaid contributions plus interest, liquidated damages, and costs incurred in this action or the collection or enforcement of a judgment.  (Id. at pp. 12–13.)  In Count II, Plaintiffs request injunctive relief under Section 502(a)(3) of ERISA, and Plaintiff UA Local 188 requests injunctive relief under Section 301 of the LMRA, 29 U.S.C. § 185, on behalf of the UA Local 188 employees.  (Id. at pp. 11–12.)  Plaintiffs allege that they are entitled to injunctive relief because "Johnson Controls' obligations pursuant to the Working Agreement are continuing obligations, and it continues to breach said Agreement by failing and refusing to pay monies due thereunder to the Funds and [UA] Local 188."  (Id.)  Furthermore, Plaintiffs allege that they "will suffer continuing and irreparable injury, loss and damage unless [Johnson Controls] is ordered specifically to perform all obligations required [of it] under ERISA, . . . the

LMRA, . . . the Working Agreement, and the governing documents of the Funds, and [is] restrained from continuing to refuse to perform as required thereunder."   (Id.)

**B.     Johnson Controls' Motion for Summary Judgment and Supplemental Motion for Summary Judgment**

On September 27, 2019, Johnson Controls filed the at-issue Motion for Summary Judgment.  (Doc. 26.)  Therein, Johnson Controls generally argues that it is entitled to summary judgment on Plaintiffs' Section 515 claim in Count I because the language of the National Agreement and Working Agreement shows that it is not obligated to make contributions for standby time and travel time to the Funds.   (See id. at pp. 4–10.)  Plaintiffs filed a Response, (doc. 29), and Johnson Controls filed a Reply, (doc. 31).  After Plaintiffs were given leave to file their Amended Complaint, Johnson Controls filed (with the Court's permission) a Supplemental Motion for Summary Judgment, requesting summary judgment with respect to UA Local 188's claim for injunctive relief under the LMRA on the basis that Plaintiffs failed to show that they will suffer an irreparable injury in the absence of injunctive relief.[4]   (See doc. 48, pp. 2–4.) Plaintiffs filed a Response in Opposition to Johnson Controls' Supplemental Motion.  (Doc. 49.)

**C.     The Parties Respective Statements of Undisputed Fact**

Pursuant to Local Rule 56.1, Johnson Controls filed a "Separate Statement of Undisputed Material Facts" in conjunction with its Motion for Summary Judgment (hereinafter, "Johnson Controls' SUF").   (Doc. 27); see S.D. Ga. L.R. 56.1 (requiring a party moving for summary judgment under Federal Rule of Civil Procedure 56 to file with its brief a "separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute

---

[4] In a previous Order, the Court permitted the parties to amend their summary judgment filings to address Plaintiff UA Local 188's claim for equitable relief under the LMRA since Count II of the original Complaint did not clearly articulate Plaintiffs' claim for injunctive relief.  (Doc. 45, p. 21; see doc. 1, pp. 7–8.)

to be tried as well as any conclusions of law thereof").  Johnson Controls' SUF consists of fifty-six separately numbered paragraphs with citations to excerpts from deposition testimony and exhibits in the record.  (See generally doc. 27.)  Plaintiffs, in addition to filing a Response to the Motion for Summary Judgment, filed their own "Separate Statement of Undisputed Material Facts" in opposition to Defendant's Motion for Summary Judgment (hereinafter, "Plaintiffs' SUF").  (Doc. 29-1.)   Plaintiffs' SUF states that "the following facts are undisputed" and then reproduces, verbatim, many of the facts from Johnson Controls' SUF, and restates other facts in an altered form (by, for example, deleting, modifying, or adding words or sentences and altering the typeface).  (Doc. 29-1, p. 2; compare generally doc. 27, with doc. 29-1.)  Furthermore, Plaintiffs omitted certain facts altogether, such that their SUF contains only forty-four separately numbered paragraphs.  (Compare, e.g., doc. 27, p. 4, with doc. 29-1, p. 4 (omitting, and thus failing to respond to, ¶ 10 of Johnson Controls' SUF).)

In its Reply to Plaintiffs' Response to the Motion for Summary Judgment, Johnson Controls argues that its SUF is unrefuted and, therefore, "comprise[s] the entire record for purposes of [its] Motion for Summary Judgment" because Plaintiffs did not reproduce its SUF in its entirety.  (See doc. 31, p. 2.)  However, Johnson Controls fails to cite to any authority establishing that a moving party's statement of undisputed material facts (hereinafter "SUF") comprises the entire record for purposes of summary judgment if the non-moving party's SUF does not explicitly refute every fact in the moving party's SUF.  (See id.)  Indeed, to the contrary, Federal Rule of Civil Procedure 56 provides that district courts may consult any materials in the record at summary judgment *even if* the non-moving party does not properly dispute an assertion of fact by the moving party.  See Fed. R Civ. P. 56(e)(3) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

grant summary judgment if the motion *and supporting materials*—including the facts considered undisputed—show that the movant is entitled to it.") (emphasis added); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it *may* consider other materials in the record.") (emphasis added).  Thus, the Court will not treat Johnson Controls' SUF as the entire record for purposes of summary judgment and, instead, will review any materials in the record that are pertinent to its analysis.

Furthermore, to the extent Johnson Controls contends that every fact set forth in its SUF is admitted pursuant to Local Rule 56.1, this argument fails.  Local Rule 56.1 provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless *controverted by a statement* served by the opposing party."  S.D. Ga. L.R. 56.1.  Johnson Controls has not provided any authority suggesting that in order to "controvert" a moving party's SUF, the non-moving party must file an SUF which reproduces verbatim each fact set forth in the moving party's SUF.  (See doc. 31, p. 2.)  Indeed, this Court has recognized that Local Rule 56.1—unlike the Northern District of Georgia's analogous local rule—does not "explicitly require[] non-moving parties to file a responsive brief and an individually numbered response to the movant's [SUF]" and has declined to impose such a requirement.  Ratchford v. F.D.I.C., No. 6:11-cv-107, 2013 WL 2285805, at *4 (S.D. Ga. May 23, 2013); cf. N.D. L.R. 56.1(B)(2)(a).  Thus, the Court declines to deem admitted each fact set forth in Johnson Controls' SUF under Local Rule 56.1.

Nonetheless, while not raised by Johnson Controls, the Court finds Plaintiffs' mere omission of certain facts from their own SUF was insufficient to create a genuine dispute as to those facts under Federal Rule of Civil Procedure 56(c)(1).  Rule 56(c)(1) provides, in relevant part, that "[a] party asserting that a fact cannot be or is genuinely disputed must support the

assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute[] or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Thus, the Court deems admitted the portions of Johnson Controls' SUF that Plaintiffs omitted from their SUF to the extent that the omitted portions have "evidentiary support in, and [are] not otherwise contradicted by, the record." Nieves v. Moody, No. 3:19-cv-002, 2020 WL 5034141, at *2 (S.D. Ga. July 30, 2020), *report and recommendation adopted*, No. 3:19-cv-002, 2020 WL 5028227 (S.D. Ga. Aug. 25, 2020); see also Phillips v. Quality Terminal Servs., LLC, 855 F. Supp. 2d 764, 772 (N.D. Ill. 2012) ("[W]here a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted."); Lewis v. Powers, No. 1:15-CV-02692-MEH, 2018 WL 6271828, at *3 n.3 (D. Colo. Nov. 30, 2018) (deeming fact admitted because non-moving party failed to refute it as required by Rule 56(c)(1)).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must

identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts, as discussed above, to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 256–57.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). Accordingly, in considering Johnson Controls' respective motions, the Court views the record and draws all reasonable inferences therefrom in the light most favorable to Plaintiffs.

## DISCUSSION

### I.  Plaintiffs' Claim under Section 515 of ERISA (Count I)

Plaintiffs allege that Johnson Controls violated Section 515 of ERISA when it failed to make contributions for standby time and travel time to the Funds pursuant to the Working Agreement.  (See doc. 46, pp. 9–11.)  Johnson Controls argues that it is entitled to summary judgment with respect to this claim because the language of the National Agreement and Working Agreement (collectively the "CBAs") did not require it to make contributions for

11

standby time and travel time.  (Doc. 26, pp. 4–10.)  Specifically, Johnson Controls argues that it

is not required to make contributions for standby time and travel time pursuant to the National

Agreement because this time does not constitute "hours actually worked" as that term is used in

the Working Agreement.  (Id.; see doc. 31, pp. 3–6.)  Plaintiffs argue, *inter alia*, that summary

judgment is improper because numerous provisions of the CBAs concerning travel time and

standby time are ambiguous.  (See doc. 29, pp. 6–10, 13–14.)

### A.      Section 515 and Interpretation of Collective Bargaining Agreements

Section 515 of ERISA provides that "[e]very employer who is obligated to make

contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement

shall, to the extent not inconsistent with law, make such contributions in accordance with the

terms and conditions of . . . such agreement."  29 U.S.C. § 1145.  When determining the scope of

an employer's obligations under Section 515, courts examine the plan documents and applicable

collective bargaining agreements.  Bakery & Confectionery Union & Indus. Int'l Health Benefits

& Pension Funds v. New Bakery Co. of Oh., 133 F.3d 955, 959 (6th Cir. 1998); see Walsh v.

Areas USA MIA, LLC, No. 1:20-cv-21627-UU, 2020 WL 4501832, at *1 (S.D. Fla. June 2,

2020) ("Plaintiffs' claims turn on whether Defendant is legally obligated under the CBA to

continue paying contributions to the Fund for those employees laid off due to the coronavirus.

The Court therefore must examine the relevant provisions of the CBA.").  "The interpretation of

collective bargaining agreements is governed by federal law; however, traditional contract

interpretation rules are applied if they are consistent with federal labor policies."  Plumbers &

Steamfitters Loc. No. 150 Pension Fund v. Vertex Constr. Co., 932 F.2d 1443, 1448 (11th Cir.

1991); see M & G Polymers USA, LLC v. Tackett, 574 U.S. 427, 435 (2015) (stating that courts

interpret collective bargaining agreements "according to ordinary principles of contract law, at

least when those principles are not inconsistent with federal labor policy"). "In construing . . . a collective bargaining agreement, determining the intent of the parties is the essential inquiry." Vertex Constr. Co., 932 F.2d at 1448; see also Tackett, 574 U.S. at 435. Under ordinary contract principles, courts first examine the natural and plain meaning of an agreement's language. Risher v. Unum Life Ins. Co., No. 2:04-cv-130, 2005 WL 1983769, at *4 (S.D. Ga. Aug. 16, 2005) (citing Dahl-Elmers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1382 (11th Cir. 1993)). When the terms of a collective bargaining agreement "are clear and unambiguous, its meaning is . . . ascertained in accordance with its plainly expressed intent." See Tackett, 574 U.S. at 435; Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997) ("[T]he actual intent of the contracting parties (i.e., the employer and the local union) is immaterial when the meaning of that language is clear."). The determination of whether a term is ambiguous is a question of law for the court which "may be resolved summarily." Orkin Exterminating Co. v. F.T.C., 849 F.2d 1354, 1360 (11th Cir. 1988). A collective bargaining agreement is ambiguous if, "after applying established rules of interpretation, [it] remains reasonably susceptible to at least two reasonable but conflicting meanings." See CNH Indus. N.V. v. Reese, 138 S. Ct. 761, 765 (2018) (quoting 11 R. Lord, Williston on Contracts § 30:4, pp. 53–54 (4th ed. 2012)); Shahpazian v. Reliance Standard Life Ins. Co., 388 F. Supp. 2d 1368, 1374–75 (N.D. Ga. 2005) ("When construing the terms of an ERISA policy, ambiguity exists if the policy is susceptible to two or more reasonable interpretations that can fairly be made, and one of these interpretations results in coverage while the other results in exclusion."). "Each provision of the CBA is interpreted 'consistently with the entire document and the relative positions and purposes of the parties' in order to 'give full meaning and effect to all [plan documents'] text, avoiding constructions that would render

provisions illusory." Pace Indus. Union-Mgmt. Pension Fund v. Robert Wood Johnson Univ. Hosp., No. 3:15 C 01032, 2017 WL 2536883, at *4 (M.D. Tenn. June 12, 2017) (quoting Moore v. Menasha Corp., 690 F.3d 444, 451 (6th Cir. 2012)). When a collective bargaining agreement is ambiguous, courts "may consider extrinsic evidence to determine the intention of the parties." Tackett, 574 U.S. at 443 (Ginsburg, J., concurring) (citing 11 Williston on Contracts § 30:2); see First Cap. Life Ins. Co.-In Conservation v. AAA Commc'ns, Inc., 906 F. Supp. 1546, 1556 (N.D. Ga. 1995). "If an examination of the available extrinsic evidence fails to conclusively resolve the issue and a question of fact as to intent remains, then summary judgment is improper." Moore, 690 F.3d at 451.

**B.    Travel Time**

Johnson Controls argues that "the applicable language of the National Agreement and Working Agreement convincingly demonstrates that [it] was not obligated to make contributions regarding travel time and this Court should enter summary judgment in [its] favor . . . regarding Plaintiffs' claims." (Doc. 26, p. 7.)    According to Johnson Controls, although the Working Agreement requires it to make contributions for "hours actually worked," the Working Agreement "does not address travel time or define the term 'hours actually worked,'" and, as a result, the National Agreement controls whether contributions for travel time are owed. (See id. at pp. 6–7; see doc. 27-3, pp. 34–36.) Paragraph 60 of the National Agreement, in Johnson Controls' view, clearly and unambiguously provides that travel time is not "hours worked," and it thus claims that contributions to the funds for travel time are not required. (Doc. 31, pp. 3–4; see also doc. 26, pp. 6–7.) The Court is not persuaded by this argument.

It is undisputed that, pursuant to Paragraph 46 of the National Agreement, contributions for pension, health and welfare funds are to be governed by local agreements (here, the Working

Agreement).  (See doc. 27-2, p. 10.)  Johnson Controls has not pointed to any evidence that the drafters of the Working Agreement, in turn, intended to allow the National Agreement (or any other agreement) to fill gaps in, or serve as a supplement to, the Working Agreement's provisions concerning benefits contributions.[5]  (See generally docs. 26, 31; see also generally docs. 27-2, 27-3.)  To the contrary, the plain language of the National Agreement suggests that Johnson Controls and the Union intended to defer entirely to the benefits provisions of local agreements (here, the Working Agreement), which are negotiated between and entered by Johnson Controls' bargaining representative and the local unions.  In addition to the language in Paragraph 46 establishing contributions to funds are governed by the applicable local agreement, Paragraph 39 of the National Agreement provides, "All of the legally negotiated fringe benefit contributions . . ., *under the employee's home local union's agreement*, shall be paid only to the Trustees of the Fringe Benefit Funds of the employee's home local union."  (Id. at p. 9 (emphasis added).)  Significantly, neither Paragraph 39 nor Paragraph 46 (nor any other provision of the National Agreement) states that the provisions regarding fringe benefit contributions in a local agreement may be supplemented by the National Agreement.  (See generally id.)  Thus, the Court declines to refer to the National Agreement to interpret the Working Agreement's use of the term "hours actually worked" in the context of travel time.  See Risher, 2005 WL 1983769, at *4 (declining to refer to DSM-IV to define the term "dementia," which was not defined in the at-

---

[5]  Although Paragraph 83 of the National Agreement provides that the National Agreement "shall apply" where "there is a conflict in meaning, interpretation, or application between [the CBAs]," (doc. 27-2, p. 17), this provision is inapplicable since there is no "conflict" between the National Agreement and the Working Agreement regarding the definition of "hours actually worked" or, more generally, Johnson Controls' obligations to contribute to the Funds.  As Johnson Controls acknowledges, the Working Agreement does not provide a definition of "hours actually worked" or even address travel time.  (See doc. 27, pp. 6–7.)  Moreover, as noted below, Paragraph 46 of the National Agreement explicitly defers to the benefits provisions contained in local union agreements.  (Doc. 27-2, p. 10.)

issue ERISA policy, because "the Plan [did] not refer participants to any source, such as the DSM-IV . . . for all medical terms used in the policy").

Furthermore, even if the National Agreement could supplement the Working Agreement's benefits provisions, the Court rejects Johnson Controls' contention that Paragraph 60 of the National Agreement unambiguously "excludes travel time from . . . 'hours actually worked.'" (Doc. 26, p. 7.) Paragraph 60 of the National Agreement provides, in relevant part, that "[a]ll travel time for service work only. . . shall be paid for at the straight time rate, and such travel *shall not be considered hours worked* and the pay, therefore, shall not be considered as pay for *hours worked*." (Doc. 27-2, p. 12.) Plainly, the term "hours worked" (in the National Agreement) is different than the term "hours actually worked," which is, in fact, not used anywhere in the National Agreement. (See generally id.) Indeed, the Working Agreement appears to distinguish between the terms "hours worked" and "hours actually worked." For example, Article IV of the Working Agreement, titled "Payroll Deductions," employs the term "hours worked," whereas Article XI requires contributions based on "the per man hours actually worked by Journeyman and Apprentices in [each Contractor's] employ." (Compare doc. 27-3, p. 15, with id. at pp. 34–35.) Notably, Johnson Controls concedes that, in using the term "hours actually worked" instead of "hours worked," the drafters of the Working Agreement must have intended for the terms to have different meanings. (See doc. 26, p. 10.) Johnson Controls has not argued—nor pointed to any evidence—that it and the Union (i.e., the drafters of the National Agreement) intended for the term "hours worked" in Paragraph 60 of the National Agreement to have the same meaning as "per man hours actually worked" as that term is used in Article XI of the Working Agreement. (See generally docs. 26, 31.) Thus, the Court cannot find as a matter of law that Paragraph 60 of the Working Agreement unambiguously excuses Johnson Controls

from making contributions for travel time.  Accordingly, the Court finds that Johnson Controls is not entitled to summary judgment with respect to contributions for travel time on the grounds asserted.

### C.    Standby Time

In its Motion, Johnson Controls argues that "the language of the [CBAs] demonstrate[s] that [it] was not obligated to make contributions to the Funds for standby time." (Doc. 26, pp. 7– 10.)   Notably, however, Johnson Controls concedes in its Reply that "neither the National Agreement nor the [Working] Agreement unambiguously address whether standby time is 'hours actually worked.'"[6]  (Doc. 31, p. 5; see id. at p. 5 n.1.)  Indeed, the Working Agreement is silent as to whether contributions are due for standby time; the only provision concerning standby time is Article III, Section 4, which provides that "[a]ll Employees on standby for weekend service calls shall receive a minimum of four . . . hours pay at applicate rate of pay each day on duty." (Doc. 27-3, p. 12.)  Additionally, Paragraph 46 of the National Agreement—the only provision which references standby time therein—provides that "on call time . . . shall be in accordance

_____

[6] Thus, it appears from the Reply that Johnson Controls no longer takes the position that it is excused under the plain language of the Working Agreement from having to make contributions to the Funds for standby time.  More specifically, Johnson Controls seems to have abandoned its argument that because Article IX of the Working Agreement employs the term "per man hours actually worked" instead of "hours paid" or "hours worked"—terms found in other provisions of the Working Agreement—the drafters "[c]learly . . . intended contributions to be made to the Funds based on *actual work activities* rather than standby time."  (Doc. 26, p. 10 (emphasis added); compare doc. 27-3, pp. 15–16 ("hours worked"); id. at p. 37 ("each hour worked"), with id. at pp. 34–35 ("per man hours actually worked").) However, even if Johnson Controls maintains that position, the Court finds no support for such a determination.  To the contrary, Article III of the Working Agreement requires Johnson Controls to compensate UA Local 188 employees for their standby time.  (See doc. 27-3, p. 12 ("All employees on standby for weekend service calls shall receive a minimum of four . . . hours pay at applicable rate of pay each day on duty.").)   The fact that the drafters of the Working Agreement made standby time compensable suggests that they considered standby time to be an "actual work activity" and, therefore, per Johnson Controls' logic, intended for it to be treated as "hours actually worked" for contribution purposes.  Therefore, to the extent that it has not been abandoned, the Court rejects Johnson Controls' argument that the use of the term "hours actually worked" in Article XI conclusively establishes that the drafters of the Working Agreement intended to exclude contributions for standby time.

with [that] established for all employees in local agreements." (Doc. 27-2, p. 10.)  Shifting focus away from the text of the Working Agreement, Johnson Controls argues that the Court should consult "the interpretation of 'hours worked' under the [Fair Labor Standards Act (FLSA)] and related caselaw" to determine whether the UA Local 188's employees' standby time constitutes "hours actually worked." (Doc. 31, pp. 5–6.)  According to Johnson Controls, "it is clear [from the facts] that standby time does not constitute 'hours actually worked'" because Johnson Controls exercised insufficient control over the UA Local 188 employees to render their on-call time compensable under the FLSA.  (See doc. 26, pp. 7–10 (citing <u>Berry v. County of Sonoma</u>, 30 F.3d 1174, 1181, 1184-1185 (9th Cir. 1994)).

Johnson Controls provides no support for the proposition that the FLSA (and the authorities interpreting it) are applicable in Section 515 actions, much less that courts should apply the test for determining whether standby time is compensable under the FLSA in order to interpret an undefined provision of a CBA.  (See docs. 26, 31.)  In fact, Johnson Controls states elsewhere in its Reply that "the FLSA . . . is not applicable to fund contributions" and that "case law addressing the FLSA [is] not applicable or controlling" in this case.  (Doc. 31, p. 5.)  Additionally, and more importantly, Johnson Controls does not argue or provide any evidence that the drafters of the Working Agreement employed the term "hours actually worked" because they intended to require contributions for all time which would be compensable under the FLSA.  (See docs. 26, 31.)  To the contrary, as noted above, Johnson Controls itself presumed that the drafters intentionally employed the term "per man hours actually worked" in Article XI of the Working Agreement *instead of* "hours worked," a term which is frequently used to describe compensable time for purposes of the FLSA.  (Doc. 26, p. 10); <u>see e.g.</u>, <u>Bolick v. Brevard Cnty. Sheriff's Dep't</u>, 937 F. Supp. 1560, 1568 (M.D. Fla. 1996) ("All that the FLSA requires is that an

employee be paid at least the minimum wage for all *hours worked*, and if no exemption applies, overtime pay for each hour in excess of the statutory minimum.") (emphasis added).  Indeed, if anything, the fact that the term "hours worked" is used in the section of the Working Agreement dealing with payroll deductions—which are regulated by the FLSA—and *not* in the provisions of Article XI governing contributions to the Funds—which are governed by ERISA—suggests an intent to not use the FLSA's test for compensable on-call time to define the term "per man hours actually worked."  (Doc. 27-3, pp. 15–16, 34-36); see, e.g., 29 C.F.R. § 3.5 (providing that payroll deductions may be made without application to or approval of the Secretary of Labor); 29 C.F.R. § 541.602(b) (providing circumstances where deductions from pay are permissible under the FLSA).

In light of Johnson Controls' concession that the Working Agreement does not unambiguously require contributions for standby time and its failure to point to any extrinsic evidence that the drafters intended for the term "hours actually worked" to exclude standby time or to be defined in reference to the FLSA, the Court declines to find as a matter of law that Johnson Controls was not obligated to make contributions to the Funds for standby time. Accordingly, Johnson Controls is not entitled to summary judgment on this issue.  See ITPE Pension Fund v. Hall, 334 F.3d 1011, 1016 (11th Cir. 2003) (vacating district court's grant of summary judgment and remanding for further discovery as to the contracting parties' intent where the court could not "by reference to only the Agreement's language determine whether unpaid employer contributions [were] assets of the Fund"); I.A.M. Nat'l Pension Fund v. Listerhill Total Maint. Ctr., LLC, No. 3:15-cv-196-CLS, 2016 WL 3386969, at *16 (N.D. Ala. June 20, 2016) ("This central dispute cannot be resolved by reference to the plain language of the 2009 Agreement, the Side Letter Agreement, or the 2012 Standard Contract Language forms, or

through application of standard rules of contract construction.  Instead, the court will be required to consider testimony and other extrinsic evidence to determine the intent of the parties.  As such, there are factual disputes that preclude the entry of summary judgment in favor of either party."); Hanley v. Prudential Recreation Corp., No. 96 CV 27(SJ), 1999 WL 184110, at *3–4 (E.D.N.Y. Mar. 30, 1999) (declining to grant defendant's request for summary judgment on Section 515 claim where the relevant terms of the CBA were undefined and the parties supplied only conclusory affidavits as to their meaning); cf. Pace Indus. Union-Mgmt. Pension Fund., 2017 WL 2536883, at *6 ("Because we find the CBA unambiguously obligated RWJUH to begin contributing on behalf of Case Managers '[e]ffective the first day of the next calendar quarter following ratification of this Agreement,' the Fund is entitled to recover the delinquent Case Manager contributions for the period from October 1, 2006 to September 30, 2007. Plaintiff's motion for summary judgment is therefore granted with respect to its claim for contributions owed on behalf of Case Managers.").

## II.     Plaintiff UA Local 188's Claim for Injunctive Relief Under the LMRA (Count II)

Plaintiff UA Local 188 requests an injunction pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, for Johnson Controls' alleged failure to pay amounts due to the Funds pursuant to the Working Agreement.  (Doc. 46, pp. 11–12.)  Section 301 of the LMRA establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  Courts may grant injunctive relief under Section 301.  See, e.g., Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Statham, 97 F.3d 1416, 1421–22 (11th Cir. 1996); Serv. Emps. Int'l. Union v. Nat'l Union of Healthcare Workers, 598 F.3d 1061, 1072–73 (9th Cir. 2010); see also Samson Tug & Barge, Co. v. Int'l Longshore & Warehouse Union, Nos. 3:20-cv-

00108-TMB, 3:20-cv-00248-TMB, 2021 WL 786768, at *8 (D. Alaska Mar. 1, 2021). According to general principles of equity, injunctive relief is available only if: (1) the plaintiff "has a substantial likelihood of success on the merits"; (2) "irreparable injury will be suffered unless the injunction issues"; (3) the threatened injury to the plaintiff "outweighs whatever damage the proposed injunction may cause the opposing party"; and (4) "if issued, the injunction would not be adverse to the public interest." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). "For a permanent injunction, the standard is essentially the same, except that the movant must establish actual success on the merits, as opposed to a likelihood of success." KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006) (citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987)). "A showing of irreparable injury is the sine qua non of injunctive relief." Siegel, 234 F.3d at 1176 (internal quotations omitted). In order to satisfy this element, "a plaintiff must show either that he will suffer, or faces a substantial likelihood that he will suffer, irreparable injury." Id. at 1176 n.9 (citing Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975)); see also Lary v Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015) (entitlement to injunction depends on showing sufficient likelihood of "future harm"). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Siegel, 234 F.3d at 1176 (internal quotations omitted).

Johnson Controls requests summary judgment based on the irreparable injury element. (Doc. 48, pp. 3–4.) Specifically, Johnson Controls argues that UA Local 188 is not entitled to injunctive relief because "there is no evidence in the record that [Johnson Controls] 'continues to breach the [Working Agreement]' as the record is wholly devoid of any evidence regarding [Johnson Controls'] payment of benefit plan contributions or failure to do so beyond the [Audit

Period],” and the Working Agreement “expired by its own terms” in July 2017.[7] (Id.) UA Local 188 argues that “during the pendency of this litigation the Union and its members are clearly injured by a shortage of contributions for hours that [the Local 188 employees] perform work in that pension contributions and health and welfare fund contributions are being withheld for those hours in dispute.” (Doc. 49, p. 4.) Furthermore, UA Local 188 contends that “[t]he record contains no evidence indicating that the agreement was terminated [pursuant to the Working Agreement] such that Johnson Controls was not required to make contributions beyond July 2017.” (Id. at pp. 4–5.)

Johnson Controls is entitled to summary judgment with respect to UA Local 188’s request for injunctive relief under the LMRA because UA Local 188 has failed to create a genuine dispute of fact as to whether it will suffer irreparable injury unless the court enjoins Johnson Controls from refusing to make contributions for standby time and travel time in the future. Specifically, UA Local 188 has failed to argue, much less present any evidence, that Johnson Controls will or is likely to refuse to make contributions for standby time or travel time in violation of the Working Agreement; it merely contends that it and its members are “clearly injured” during the pendency of this litigation by Johnson Controls’ prior failure to make contributions during the Audit Period. (Doc. 49, p. 4; see generally doc. 49.) However, “injunctive relief . . . addresses only ongoing or future violations,” Reich v. Occupational Safety & Health Rev. Comm’n, 102 F.3d 1200, 1202 (11th Cir. 1997), and the irreparable injury requirement has not been met “where there is no showing of any real or immediate threat that the plaintiff will be wronged again,” City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Although the Amended Complaint alleges that Johnson Controls “continues to breach [the

---

[7] Johnson Controls did not move for summary judgment as to Plaintiffs’ request for injunctive relief under Section 502(a)(3) of ERISA. (See generally docs. 26, 48.)

Working Agreement] by failing and refusing to pay monies due thereunder to the Funds" and that Plaintiffs "will suffer continuing and irreparable injury, loss and damage unless Defendant is ordered specifically to perform all obligations required on Defendant's part under[, *inter alia*,] . . . the Working Agreement," (doc. 46, p. 12), these conclusory allegations, without any supporting evidence, are insufficient to survive summary judgment.  See Anderson, 477 U.S. at 256–57 (party opposing summary judgment must go beyond the pleadings and present affirmative evidence to show existence of genuine dispute of fact); see also Bouey v. Orange Cnty. Serv. Unit, 673 F. App'x 952, 954 (11th Cir. 2016) ("A plaintiff's own conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment.") (internal quotations omitted).  Even assuming that the Working Agreement remains in effect, there is no evidence—such as testimony or audits showing that Johnson Controls refused to contribute for standby time and travel time after the Audit Period or the Working Agreement's termination date—indicating that Johnson Controls will or is likely to refuse to make said contributions to the Funds again.  See Sierra Club v. Tenn. Valley Auth., 592 F. Supp. 2d 1357, 1375 (N.D. Ala. 2009) (dismissing claim for permanent injunction, in part, because "Plaintiffs . . . failed to show that any non-exempt exceedances since January 1, 2008," were "likely to recur").  Therefore, absent an adequate showing that UA Local 188 will suffer irreparable harm without an injunction, Johnson Controls is entitled to summary judgment with respect to UA Local 188's request for injunctive relief under the LMRA.  See, e.g., Lary, 780 F.3d at 1107 (affirming district court's grant of summary judgment because plaintiff failed to establish "a likelihood of future harm"); Kever v. Sec'y, Dep't of Corr., No. 3:19-cv-482-J-39PDB, 2019 WL 1980568, at *1 (M.D. Fla. May 3, 2019) ("Plaintiff is unable to establish 'irreparable injury' . . . .

Significantly, Plaintiff complains about an incident that occurred over a year ago, and he does not assert continuing violations.").

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant Johnson Controls' Motion for Summary Judgment, (doc. 26), and **GRANTS** Defendant Johnson Controls' Supplemental Motion for Summary Judgment, (doc. 48). Accordingly, UA Local 188's claim for an injunction under Section 301 of the LMRA in Count II of the Amended Complaint is **DISMISSED**. Thus, the remaining claims are Plaintiffs' claim to recover the alleged delinquent contributions under Section 515 of ERISA in Count I and the request for injunctive relief under Section 502(a)(3) of ERISA in Count II.

**SO ORDERED** this 20th day of May, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA